THE KANKAKEE DRAINAGE DISTRICT

*v.*

THE COMMISSIONERS OF LAKE FORK SPECIAL DRAINAGE DISTRICT.

*Filed at Springfield October 31, 1889.*

1.  DRAINAGE LAW—*connecting districts—liability as between them— the statute construed.*  Section 42 of the Farm Drainage act of 1885, which provides that "the owners of land outside the drainage district, or another drainage district, may connect with ditches of the district already made, by the payment of such amount as they would have been assessed if originally included in the district, or, if such connection, by increase of water, requires an enlargement of the district ditches, then the outside owners of land so connecting, or other drainage district, as may be, shall pay the cost of such enlargement," is applicable alike to all of the several classes of drainage districts formed under that act or the act of which it was a revision and amendment, but does not apply to and impose burdens upon a connecting drainage district formed under another and wholly independent act of the legislature.

2.  A drainage district was formed under the act relating to farm drainage districts, and constructed a ditch or drain through a slough. Afterward, another drainage district was organized under the "Act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," approved and in force May 29, 1879, which provided for a different and independent system of drainage districts from those contemplated by the Farm Drainage act, and the latter district constructed ditches above that of the former drain, and connecting therewith, whereby the flow of water in the first drain was increased, but the water in the upper district naturally flowed over the lands in the lower dis-

trict: *Held*, that the upper district was not liable, under the statute, to the lower district for the cost of enlarging its drain, made necessary by the connecting of the upper ditch or drain with the drain of the lower district.

3. In such case, unless imposed by some statute, there was no duty upon the upper district, when it connected its ditch or drain with that of the lower district, either to contribute and pay any portion of the expense that was incurred by the latter district in constructing its ditch which afforded an outlet for the water from the upper district, or to pay the cost of so enlarging the ditch of the lower district as that it would be of sufficient capacity to carry off the increased volume of water.

4. ACTION—*under repealed statute.* An action will not lie upon a repealed statute unless the cause of action shall have accrued prior to its repeal.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Piatt county; the Hon. JAMES F. HUGHES, Judge, presiding.

Mr. WILLIAM B. WEBBER, for the plaintiff in error.

Mr. S. R. REED, Mr. H. H. CREA, and Mr. W. E. LODGE, for the defendant in error.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The commissioners of Lake Fork Special Drainage District in the counties of Piatt, Champaign and Douglas, prosecuted this action on the case in the Piatt circuit court, against the Kankakee Drainage District, and recovered judgment for $4000, and the judgment was affirmed by the Appellate Court for the Third District.

Numerous questions are raised by the assignments of error, and are discussed by counsel, but in the view we have taken of the case it will be necessary to consider but one of these.

There are two counts in the declaration. The substance, briefly stated, of the first count, is, that the plaintiff corporation was duly organized under the Drainage act, approved May 29, 1879, and in force July 1, 1879 ; that it constructed a ditch along or near the channel or bed of the Lake Fork or Okaw

slough, of sufficient capacity to carry off all the waters that would fall upon the Lake Fork Special Drainage District, and properly drain all the lands in the district, and also carry off all water that would naturally flow into said district from lands above the same; that the defendant district cut a ditch through the lands lying above the Lake Fork district, and numerous lateral or side ditches connecting therewith, and on the 12th of July, 1885, connected its main ditch with the upper end of the Lake Fork ditch, so that a much larger quantity of water was caused to flow into the latter ditch than would naturally flow into it, rendering it necessary to enlarge the same, which . was done by the Lake Fork Special Drainage District, at great cost and expense, and that it was the duty of the Kankakee Drainage District to pay the cost and expense of such enlargement.

The second count, briefly stated, is, that the plaintiff district located and laid out its ditch; that thereafter the Kankakee Drainage District cut a ditch through the lands of which it was composed, lying above those of the plaintiff district, and connected said ditch with and emptied its waters into the ditch of the plaintiff district; that the cost of the ditch of the plaintiff district was $70,000, and that it became and was the duty of the Kankakee Drainage District to pay such amount as it or the lands embraced therein would have been assessed if it or they had been originally included in such plaintiff district, etc.

It is very evident that both counts of the declaration are predicated upon the provisions of section 42 of the Farm Drainage act, approved June 27, 1885, and in force July 1, 1885, (Laws of 1885, p. 77,) which act was an amendatory revision and consolidation of the act in force July 1, 1879, and the several acts amendatory thereof, and under which the plaintiff district had been organized and was operating. Said section, among other things, provides as follows: "The owners of land outside the drainage district, or another drainage district, may connect with the ditches of the district already made, by the

payment of such amount as they would have been assessed if originally included in the district; or if such connection shall, by increase of water, require an enlargement of the district ditches, then the outside owners of land so connecting, or other drainage district, as may be, shall pay the cost of such enlargement."

This section 42 is one of the general provisions of the act of 1885, and is applicable alike to all of the several classes of drainage districts formed under that act or the act of which it was a revision and amendment. The question is presented, whether or not said section applies to and imposes burdens upon connecting drainage districts formed under another and wholly independent act of the legislature. The General Assembly has, in the latter part of section 78 of the act of 1885, declared the legislative intention in respect to the scope of that act. It is there enacted: "This act * * * shall not affect other independent laws for drainage and levees not herein mentioned, but shall be construed as an independent act, not affecting other independent drainage laws, * * * and the special provisions of this act for their own class of districts shall apply only to such districts, but the general provisions applicable to all districts shall apply to all districts provided for in this act." This section 42 being a general provision, applicable to all districts, and the act declaring that provisions of that kind "shall apply to all districts provided for in this act," it follows, upon the familiar principle that the expression of one thing is the exclusion of another, that the reasonable implication is, that section 42 has no application to districts organized under another and different law, and being component parts of an independent system of drainage. Said section 42, in express terms, imposes a liability upon "owners of land outside the drainage district" who connect with the ditch of such district, and if it had been intended that a like liability should be incurred by a corporation not the owner of land, and formed under a different and independent act, for making

such connection, it must be presumed such intention also would have been clearly expressed. Moreover, it is difficult to perceive how this section 42 could be construed as part of "an independent act, not affecting other independent drainage laws," and yet be effectual to burden drainage districts organized and operating under such "other independent drainage laws" with legal liabilities to which they are not otherwise amenable. And the mandate of the statute is imperative that the "act shall not affect other independent laws for drainage and levees not herein mentioned." The language we have above quoted from section 78 is a legislative construction of the act of 1885, including said section 42, by the legislature that enacted such law, and is contained in the very act itself, and is entitled to great and controlling weight in ascertaining the intention of that law.

The ditches of both the Lake Fork Special Drainage District and of the Kankakee Drainage District were located and dug in the natural depression, regular channel or water-course known as the Lake Fork or Okaw slough, and the lands in the first named district are the lower or servient lands, and the lands in the latter district are the upper or dominant lands. In *Peck* v. *Herrington,* 109 Ill. 611, it was held by this court, that while the owners of dominant lands are not authorized to create new channels for surface water through the servient lands, yet they may make such drains for agricultural purposes, through their own lands, as may be required by good husbandry, although by so doing the flow of water may be increased in a regular, well defined channel, which carries the water from the upper to the lower lands. It was also there held, that the owners of land upon which there is a pond, in which is collected only the surface water from rains and melting snow, may, when good husbandry so requires, drain the same by an artificial drain constructed upon their own lands, whereby its water is thrown into the same outlet or natural drain it was accustomed to take before, when the pond was

full, notwithstanding the flow of water over servient lands might be thereby increased. The rules so held in *Peck* v. *Herrington* were not based upon any statute, but, there being no statutory provisions relating thereto, were decided to be the law of this State. It can not be concluded that plaintiff in error, by availing itself of an acknowledged legal right, has rendered itself obnoxious to respond in damages, without such liability is clearly and plainly fixed by statute. In the absence of such statute, the loss, if any, occasioned by its act, would be merely *damnum absque injuria.*

It is evident, then, that without some statute imposed upon the Kankakee Drainage District, when it connected its ditch or drain with the ditch or drain of the Lake Fork Special Drainage District, the duty either to contribute and pay some portion of the expense that was incurred by the latter district in constructing its ditch, which afforded an outlet for the waters from the upper district, or to pay the cost of so enlarging the ditch of the lower district as that it would be of sufficient capacity to carry off the increased volume of water, there was no legal duty or obligation incumbent upon said Kankakee Drainage District so to do.

The record made and proceedings had in the formation and operation of the Kankakee Drainage District, were, upon the trial, put in evidence by said district, and it clearly appeared therefrom that said district was organized under the provisions of "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," approved and in force May 29, 1879, which act provided for a different and independent system of drainage districts from those contemplated by the Farm Drainage act, under which the Lake Fork Special Drainage District was formed. We think, therefore, for the reasons already stated, that it is also manifest that section 42 of the Farm Drainage act was not intended to

and did not impose any legal liability in that behalf upon the plaintiff in error.

It is suggested, however, that section 69 of the amendment of 1881 to the Drainage act of 1879, under which the Lake Fork Special Drainage District was organized, gave it a right of action. It would be a sufficient answer to this claim, that the causes of action alleged in the declaration are not based upon that statute. But besides this, and without any consideration of various serious questions that would arise in respect to the construction to be given said section 69, suffice it to say, that said section 69 was repealed by the revised Farm Drainage act, in force July 1, 1885, and that it was the finding both of the trial court and of the Appellate Court that the ditch of the Kankakee district was connected with that of the Lake Fork district after said first day of July, 1885, and such finding of fact is conclusive upon this court, and that, consequently, no cause of action had accrued, under section 69, to the Lake Fork Special Drainage District, prior to the time said section ceased to be the law, by the Kankakee district opening a drain or ditch into the drain or ditch of said Lake Fork district.

Our conclusion is, that after the evidence introduced by the Kankakee Drainage District had established the fact that said district was organized and operating under independent laws for drainage and levees, not mentioned in the amendatory, consolidated and revised act of 1885, the circuit court should have held that section 42 of said last mentioned act gave no cause of action to the Lake Fork Special Drainage District, as against the plaintiff in error, and that it was error in said court, in its rulings upon the instructions to the jury, to act upon the theory a legal liability was imposed upon plaintiff in error, by said section 42, to respond in damages to the defendant in error.

For the error indicated, the judgments of the Appellate and circuit courts are reversed.

*Judgment reversed.*