## Hickory Grove Drainage District v. Mason & Tazewell Special Drainage District, et al.

1.  DOMINANT LAND—*what not within right of owner of.*  The
owner of the dominant land has no right to remove a natural bar-
rier or watershed and thereby cause to flow upon the servient land
water which would not otherwise naturally flow thereon.

Injunctional proceeding.   Appeal from the Circuit Court of Taze-
well County; the Hon. THEODORE N. GREEN, Judge, presiding.   Heard
in this court at the May term, 1905.   Reversed and remanded.
Opinion filed March 20, 1906.

W. W. HAMMOND and W. R. CURRAN, for appellant.

JESSE BLACK, JR., and WILLIAM A. POTTS, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

December 1, 1904, appellant, the Hickory Grove Drain-
age District, filed its original bill against appellees, the

Mason and Tazewell Special Drainage District and the commissioners of said district, for an injunction restraining appellees from entering upon certain territory within the boundary of appellant district with a dredge boat for the purpose of enlarging a ditch belonging to appellee district, and from connecting the same with a ditch belonging to appellant. Upon the filing of the bill a temporary injunction was granted, and on December 6, 1904, appellee district filed its answer to the original bill together with affidavits in support of such answer, and also its motion to dissolve the injunction. December 9, 1904, appellant filed its amended bill in the cause together with affidavits in support thereof, and on the day following appellee district filed its answer to such amended bill. The motion to dissolve the temporary injunction was heard by the chancellor upon the original and amended bills, the answers thereto, and affidavits in support of said bills and answers, and certain accompanying exhibits, and upon consideration thereof a decree was entered dissolving the injunction and dismissing the bill for want of equity.

Appellant district was organized July 6, 1882, under the drainage laws of 1879, and its southerly boundary is the south line of section 26, town 23, N. R. 6 W., in Tazewell County. Appellee district was organized in December, 1882, under the drainage laws of 1879, and includes lands lying south of the south line of said section 26. The north boundary line of appellee district being the south boundary line of appellant district. The lands in appellant district are generally lower than the lands in appellee district and the natural drainage of appellant district and of a portion of appellee districts is to the north. Soon after its organization appellant constructed its main ditch, 30 feet wide and 10 feet deep, beginning at a point near the center of section 26 and running north to Mackinaw creek where it discharged.

Appellee district, in 1883, constructed a ditch 27,000 feet in length known as the north Quiver ditch, commencing at the center of section 26, in conjunction with the main ditch of appellant, and running thence south to the south line of

section 26, thence southwesterly through the northwest quarter of section 35, thence southwesterly through sections 34, 4, 8 and 7 to its junction with the main Quiver ditch. The portion of the ditch of appellee district in section 26, being within the territory of appellant, was constructed in the first instance by virtue of a judgment in condemnation proceedings, whereby appellee district acquired a right of way 60 feet in width in the southwest quarter of said section.

February 21, 1884, appellant filed its bill in the Circuit Court of Tazewell county against appellee district and certain contractors, to enjoin the construction of the north Quiver ditch and its connection with the ditch of appellant in section 26, upon the alleged ground that the construction of said ditch by appellee district and its connection with the ditch of appellant would drain into appellant's ditch a large volume of water from lands lying outside of appellant's district, the natural drainage of which lands was in a southwesterly direction. During the pendency of that suit, a settlement of the matters therein involved was arrived at between the commissioners of the respective drainage districts, and a written agreement embodying the terms of such settlement was executed by such commissioners. The written agreement being lost, recourse must be had to parol evidence to ascertain its terms, and it is established by such evidence that by the terms of said written agreement appellee district was permitted to connect its north Quiver ditch carrying the natural watershed with the ditch of appellant in section 26, upon condition that the appellee district would protect appellant from the increased flow of water, fill or otherwise on account of such connection, by cleaning appellant's ditch at the expense of appellee district.

North Quiver ditch as enlarged by appellee district to the south line of section 26, in accordance with the specifications therefor in evidence, is 12 feet in width at the bottom throughout its entire length, and has a slope of 1 to 1 on the sides. This enlargement of said ditch has also necessitated its deepening from 2 to 6 feet throughout its entire length. It must be conceded upon the evidence in this record that the

extension of north Quiver ditch northward into section 26 and its connection at that point with the ditch of appellant, in accordance with the plans and specifications thus far adhered to and proposed to be carried out, will result in deflecting into the main ditch of appellant a much larger volume of water from the territory of appellee district than appellant's ditch has heretofore carried, and it may be conceded that if the natural drainage of all the lands in appellee district is toward appellant's ditch, and such increased flow of water is caused solely by the enlargement of a natural channel, and not by the removal of a natural barrier or watershed, whereby water not naturally flowing from the lands in appellee district into appellant's ditch will be caused to flow therein, appellant is bound to receive such increased flow of water, and is without remedy in the premises.    Kankakee Drainage District v. Com's of Lake Fork Drainage District, 130 Ill., 261.

But appellee district, although the lands within its boundary are the dominant lands, has no right to remove a natural barrier or watershed, and thereby cause to flow upon the servient lands in appellant district water which would not otherwise naturally flow thereon.    Dayton v. Drainage Com's, 128 Ill., 271.

Appellant contends that there is a natural barrier or watershed in appellee district near the south line of section 34, at a point about 8,000 feet southwest of the south line of section 26, and that at that point in north Quiver ditch there is a divergence in the natural flow of the water to the northeast and southwest, while appellees contend that such natural barrier or watershed is at a point in the southwest corner of section 4, 15,000 feet southwest from the south line of section 26.

We think a preponderance of the evidence in the case tends to show that the natural barrier or watershed is at or near the Spaitz road, near the south line of section 34, about 8,000 feet southwest of the south line of section 26.

In its answer to the original bill, appellee district alleged that the natural slope and surface drainage of its lands was

divided by a watershed, the highest point of which was near the south line of section 34. W. H. Oogdal, William C. Hall, Stephen Mahr, John Marshall, Henry Gumbel, J. L. McWilliams and James Hobkirk, whose affidavits were filed by appellees on the hearing of the motion to dissolve the temporary injunction, state that the watershed is near the center line of section 34, and the affidavit of Hobart Hamilton, a civil engineer employed by appellee district, is to the same effect. Furthermore, it appears that at a meeting of the commissioners of the two drainage districts, held for the purpose of settling, if possible, the litigation pending in 1884, the commissioners of appellee district proposed to turn over to appellant the portion of their district lying north of the Spaitz road. We think this proposition was a clear recognition by appellee district of the fact that there was a watershed in its district at or near the Spaitz road, and this view is confirmed by an examination of the profile of north Quiver ditch as it was constructed in pursuance of the written agreement heretofore referred to, which profile discloses that the bottom of the ditch was highest near the Spaitz road, and that the water there diverged to the northeast and southwest.

Assuming, however, that the natural watershed is in the southwest quarer of section 4, as contended by appellees, it is uncontroverted that north Quiver ditch as now enlarged will divert the flow of water therein from the southwest into the main.ditch of appellee district to the northeast into the main ditch of appellant, from a point near the center of section 8, which is more than half a mile southwest of the watershed as located by appellees. Thus, according to its own contention, appellee district proposes to drain into the main ditch of appellant, surface water from one-half mile of territory within its district, which would naturally flow into its own main ditch. This, appellee district may not do, and appellant is entitled to relief by injunction to prevent it.

It is insisted by appellees that appellant has a complete remedy at law under the contract heretofore mentioned, entered into between the commissioners of the respective drainage districts. That contract, by its terms, only contem-

plated a connection of the ditch of appellee district with appellant's ditch for the carrying of water within the natural watershed, which, as we have heretofore stated, must have been understood by the parties as extending only to the Spaitz road. The contract did not contemplate an enlargement of the north Quiver ditch in accordance with the plans and specifications adopted by appellee district ten years later, whereby two miles of additional territory lying southwest of the Spaitz road would be drained into appellant's ditch.

It is also urged on behalf of appellees that about two months prior to the granting of the temporary injunction in the case, and while the dredge boat was engaged in enlarging north Quiver ditch, one of the commissioners of appellant district was notified by representatives of appellee district, in charge of the work, that the ditch was to be enlarged and deepened in accordance with the plans and specifications; that appellant thereby had notice of the intention of appellee district to connect such enlarged ditch with the main ditch of appellant, and appellant, not having then objected to the further prosecution of the work, is equitably estopped to enjoin the connection of the two ditches.

If the doctrine of equitable estoppel could be invoked by appellees in this case, the facts in evidence do not justify the application of the doctrine. The only evidence tending to support the contention of appellees in that regard is that of W. L. Prettyman, who states in his affidavit that while the dredge boat was at work in north Quiver ditch, in the southwest quarter of section 4, Henry Dix, one of the commissioners of appellant district, was notified by the men in charge of the dredge boat that they would cut to a depth of 6 feet deeper for a distance of some 6,000 feet to the north. At most this only amounted to notice to Dix that the dredging would be continued to the Spaitz road, which was about 6,000 feet north of the southwest quarter of section 4, and entirely within the natural watershed to the southwest as claimed by appellant. Appellant is not here complaining of the work done by appellee district within the natural water-

shed to the southwest, but of the continuation of that work through such natural watershed, whereby surface water naturally flowing to the southwest will be caused to flow to the northeast.

The decree of the Circuit Court is reversed and the cause remanded for further proceedings not inconsistent with the views here expressed.

*Reversed and remanded.*

MR. PRESIDING JUSTICE PUTERBAUGH took no part in the decision of this case.